IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 3:20-BK-01132 |
| AFFILIATED CREDITORS, INC. | ) | Judge Charles M. Walker |
| | ) | Chapter 11 |
| Debtor. | ) | |

**EXPEDITED MOTION FOR ENTRY OF
ORDER AUTHORIZING USE OF CASH COLLATERAL**

The Debtor respectfully submits this Expedited Motion for Entry of Order Authorizing Use of Cash Collateral (the "Motion") pursuant to 11 U.S.C. § 363 and Federal Rule of Bankruptcy Procedure 4001(b). The Debtor specifically seeks Court approval and authorization for the immediate interim and final use of cash collateral.[1]

**COMPLIANCE WITH LOCAL RULE 2081-1 NOTICE**

Pursuant to Local Rule 2081-1(f), notice is hereby provided that this motion requests the following relief:

1. *Findings, conclusions, or holdings as to the amount of a debt or the validity, priority, or extent of a lien or security interest that purport to affect the rights of any entity other than the debtor-in-possession and the creditor.* For the limited purpose of obtaining the interim relief requested in the Motion, the Debtor does not dispute the validity or extent of liens in favor of Regions Bank. The Debtor reserves the right to challenge the validity or extent of any such liens at or before the final hearing on the Motion.

2. *Granting surcharge or "carve-out" rights to professionals or any restrictions (other than court approval) on the surcharge or carve-out rights granted to professionals—for example, a restriction on investigation or pursuit of causes of action against a lender or secured creditor.* See paragraph 21 below and the budget attached hereto as Exhibit A (the "Budget"). [2]

---

[1] The term "cash collateral" as used herein has the same definition as that provided in 11 U.S.C. § 363(a).

[2] The Budget was created by Tortola Advisors ("Tortola"), a turnaround and restructuring firm that the Debtor seeks to employ in connection with this case. Tortola created the budget based on the limited information available to it at the time immediately prior to filing this case. It is expected that the Budget may need to be amended based on additional financial facts revealed during the pendency of this case. In the event such facts become known, the

# HISTORY OF DEBTOR

1. On February 22, 2020 ("Petition Date") Affiliated Creditors, Inc. ("Debtor" or "ACI") filed a voluntary petition under the provisions of Chapter 11 of the United States Bankruptcy Court with the United States Bankruptcy Court for the Middle District of Tennessee.

2. Pursuant to the provisions of §§ 1107 and 1108 of the Bankruptcy Code, the Debtor is operating its business and managing its affairs as a Debtor-in-Possession. No Trustee or Examiner has been requested or appointed.

3. Since 1981, ACI has been providing innovative debt recovery solutions for its clients. Over its 39 years in business, ACI built an excellent reputation as a leader and innovator in accounts receivable management.

4. The company is a Certified Veteran Owned business. It is organized as a Tennessee corporation and Roy Arnold Williams, Jr. ("Mr. Williams") is the sole shareholder, president, and CEO. The company is authorized to conduct business in 36 states and currently employs 13 people.

5. ACI's business is focused on collecting third-party accounts receivable. Its database contains over 1 million accounts totaling more than $300 million of all types of healthcare, multi-family and commercial accounts. As a result of industry consolidation and leadership changes at some of ACI's largest clients, the company lost a significant amount of business in the last two years, representing approximately 60% of revenues. This loss in clients and revenue precipitated this Chapter 11 filing.

---

Debtor will seek to amend the Budget as necessary.

6. Mr. Williams has been employed by ACI for 23 years and acquired 25% of the shares of the company in 2015. In June of 2016, Mr. Williams acquired the remaining shares through a stock redemption with the prior owner for a purchase price of $1.5 million. To finance that transaction, ACI received an SBA loan through Regions Bank in the amount of $1,462,200.00 (the "Term Loan"). Interest under the Term Loan was charged at 5.25% for the first three years, and then an amount equal to the Prime Rate plus 1.75%. As collateral for the Term Loan, Regions Bank was granted a security interest in substantially all its assets. As of the Petition Date, the balance of the Term Loan is approximately $1,032,000.

7. In February of 2017, ACI entered a financing arrangement with Regions Bank to borrow an additional $350,000 as a line of credit (the "Line of Credit") for working capital. As collateral for the Line of Credit, Regions Bank was granted a security interest in substantially all of ACI's assets. As of the Petition Date, the balance of the Line of Credit is approximately $350,000.

8. As of the Petition Date, the principal assets of the business consist of client contracts to collect receivables in the aggregate amount of approximately $300 million, cash in the approximate amount of $399,200, and account receivables (Debtor's fee income) in the approximate amount of $129,730. Debtor's cash on hand includes funds it has recovered on behalf of its clients. As set forth below, Regions Bank claims a security interest in cash collateral including all cash and in all accounts.

9. As of the Petition Date, only Regions Bank holds a security interest in the assets of the Debtor that constitute cash collateral. Regions Bank has a secured claim as of the Petition Date in the approximate amount of $1,382,000. Unsecured debt is

3
Case 3:20-bk-01132    Doc 4    Filed 02/22/20    Entered 02/22/20 11:09:40    Desc Main
Document    Page 3 of 14

estimated to be approximately $600,000, of which $546,894 represents funds owed to ACI's clients.

## JURISDICTION

10. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## SUMMARY OF RELIEF REQUESTED

11. *Expedited Relief Requested*. The Debtor requests that the Court authorize the Debtor's use of cash collateral. The Debtor requests permission to use cash to fund ordinary business operations and necessary expenses in accordance with the Budget, attached as Exhibit A.

12. *Basis for Urgency.* This motion must be considered on an expedited basis because the Debtor's business operations will suffer immediate and irreparable harm if the Debtor is not allowed to use cash collateral. To stay in business and maximize the value of its bankruptcy estate, the Debtor must pay ordinary expenses, utilities, and vendors that are necessary to operate its business. Furthermore, as a collection agency, Debtor is in possession and control of millions of instances of protected health information and consumer data and requires use of cash to maintain the security thereof.

13. *Notice.* This motion has been served on (i) all parties consenting to electronic service via the Court's CM/ECF system, (ii) the Office of the United States Trustee via email, (iii) the 20 largest creditors and all secured creditors via email, fax, or hand-delivery. This motion has also been sent by email to Regions Bank, the sole entity alleging to have a perfected security interest in the Debtor's cash collateral. On February

21, 2020, the Debtor informed the Office of the United States Trustee that first day motions would be filed in this case.

14. *Suggested Hearing Date*. The Debtor requests a hearing date of February 25, 2020 at 9:00 a.m., Courtroom 2, Customs House, 701 Broadway, Nashville, Tennessee 37203.

15. *Supporting Argument*. The Debtor supports this motion as set forth below.

## REQUESTED RELIEF

16. The Debtor recognizes the requirements of 11 U.S.C. § 363 and submits that it maintains cash accounts which may constitute "cash collateral."

17. Based on a lien review conducted by the Debtor prior to the petition date, it is believed that only Regions Bank asserts an interest in the Debtor's cash collateral. The Debtor's lien review revealed the following:

> a. **Term Loan**. On June 23, 2016, Regions Bank filed a UCC-1 financing statement with the Tennessee Secretary of State, asserting a lien on substantially all of the Debtor's assets.
>
> b. **Line of Credit**. On April 6, 2017, Regions Bank filed a UCC-1 financing statement with the Tennessee Secretary of State, asserting a lien on substantially all of the Debtor's assets.
>
> c. The Debtor's lien review found no other UCC-1 financing statements asserting a lien on the Debtor's assets.

18. By this Motion, the Debtor requests interim and final authorization for the use of cash in accordance with the Budget.

19. In order to continue operations during the course of this case, which is necessary to maximize the value of the Debtor's assets, the Debtor must continue to use cash collateral. In connection with its operations, the Debtor incurs expenses which

include, but are not limited to, expenses related to payroll, utilities, office expenses, vendor fees, database expenses, and attorney's fees and court costs attendant to its collection agency business.

20. Permitting the Debtor to use cash collateral will allow the Debtor to (a) avoid disruption of its workforce; (b) maintain its office; (c) maintain its efforts to collect accounts; and (d) protect and preserve protected patient health information and consumer data.

21. In addition to the expenses set forth in the Budget, Debtor requests a carve-out and authority to use cash collateral for payment of: (i) allowed professional fees and disbursements to professionals whose employment has been approved by the Court; (ii) United State Trustee quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6); and (iii) any fees payable to the Clerk of the Bankruptcy Court.

22. As for adequate protection for the limited use of cash collateral, the Debtor intends to provide to Regions Bank a replacement lien in accordance with 11 U.S.C. §§ 361(2) and 552(b) to the extent of cash collateral actually expended, and on the same assets and in the same order of priority as currently exists. Any such replacement lien shall be to the same extent and with the same validity and priority as Regions Bank's pre-petition lien, without the need to file or execute any document as may otherwise be required under applicable nonbankruptcy law.

23. The Debtor seeks authorization to use cash collateral during the term of any Interim Order that may be entered in connection with this Motion and during the term of the Chapter 11 case upon the entry of any Final Order on this Motion.

24. Debtor has consulted with the United States Trustee and Regions Bank and no objections have been raised by these parties to this Motion.

WHEREFORE, the Debtor respectfully requests the entry of an Order:

(i) Granting this motion;
(ii) Authorizing the Debtor's use of cash collateral in accordance with the Budget and as otherwise requested herein;
(iii) Scheduling a final hearing to grant the Debtor final approval to use cash collateral;
(iv) Setting a hearing on this motion as soon as practicable; and
(v) Granting such other and further relief as is just and appropriate.

Respectfully submitted,

/s/ Robert J. Gonzales
Robert J. Gonzales (robert@emerge.law)
Elliott W. Jones (elliott@emerge.law)
Nancy B. King (nancy@emerge.law)
EmergeLaw, PLC
4000 Hillsboro Pike, Suite 505
Nashville, Tennessee 37215
(615) 953-2629

ATTORNEYS FOR DEBTOR

**CERTIFICATION OF DEBTOR'S COUNSEL**

Debtor's Counsel certifies that the cash collateral motion does not contain: (1) cross-collateralization clauses; (2) findings that bind the estate with respect to the validity, perfection or amount of the secured party's lien or debt; (3) findings that with respect to the relative priorities of the secured party's lien and liens held by persons who are not party to the stipulation; (4) provisions in the interim order that permit the secured party's lien to attach to unsecured property of the estate, or have priority over other existing secured creditors in property of the estate that is already subject to a secured creditor's lien; (5) waivers under § 506(c); (6) provisions that operate expressly or as a practical matter to divest the debtor, or any other party in interest, of discretion in the formulation of a plan or administration of the estate, or limit access to the court to seek any relief under applicable provisions of law; (7) releases of liability by the debtor of any claim or cause of action against the secured creditor, including without limitation (i) for the

7
Case 3:20-bk-01132   Doc 4   Filed 02/22/20   Entered 02/22/20 11:09:40   Desc Main
Document      Page 7 of 14

creditor's alleged prepetition torts, breaches of contract, or lender liability, (ii) releases of prepetition or postpetition defenses and/or counterclaims, and (iii) releases of any avoidance actions arising under the Bankruptcy Code; (8) automatic relief from the stay of § 362(a) upon the debtor's default under the cash collateral or financing agreement or stipulation, conversion to Chapter 7, or the appointment of a trustee; (9) adequate protection provisions that create liens on claims for relief arising under the Bankruptcy Code, including without limitation, claims arising under §§ 506(c), 544, 545, 547, 548, and 549; (10) waivers, effective on default or expiration of the term of the agreement or stipulation, of the debtor's right to move for a court order pursuant to § 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent.; (11) carve outs for administrative expenses that do not treat all professionals equally or on a pro rata basis; (12) provisions that create an unreasonably short limitation period for the debtor or any other party in interest (including a successor trustee) to bring claims or causes of action against the secured creditor; (13) a finding without supportive evidence to the effect that in consenting to the use of cash collateral or postpetition financing, the secured creditor is acting in good faith; (14) provisions applicable in the event of dispute or default under the agreement that place venue in any other court; (15) provisions applicable in the event of a dispute or default under the agreement wherein the debtor waives service of process, the doctrine of forum non conveniens, notice and hearing, or the right to a jury trial; and (16) provisions applicable in the event of a dispute or default authorizing the financing party or anyone else to sue in the name of the debtor.

/s/ Robert J. Gonzales
Robert J. Gonzales

## CERTIFICATE OF SERVICE

On February 22, 2020, the foregoing was served via CM/ECF on all parties consenting to electronic service in this case and by regular mail, email or fax (as applicable) to (i) each of the Secured Creditors, (ii) the Debtor's twenty largest unsecured creditors, (iii) the Office of the United States Trustee.

/s/ Robert J. Gonzales
Robert J. Gonzales

8
Case 3:20-bk-01132    Doc 4    Filed 02/22/20    Entered 02/22/20 11:09:40    Desc Main
Document    Page 8 of 14

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 3:20-BK-01132 |
| AFFILIATED CREDITORS, INC. ) | Chapter 11 |
| ) | Judge Charles M. Walker |
| Debtor. ) | |

**EXPEDITED ORDER AUTHORIZING USE OF CASH COLLATERAL
ON AN INTERIM BASIS AND SETTING FINAL HEARING**

This matter is before the Court on the Debtor's Expedited Motion for Entry of Order Authorizing Use of Cash Collateral (the "Motion") pursuant to Bankruptcy Rule 4001(b) and 11 U.S.C. § 363(c)(2)(B).

**LOCAL RULE 2081-1 NOTICE**

Pursuant to Local Rule 2081-1(f), the Debtor provided notice of the following relief in the Motion:

*1. Findings, conclusions or holdings as to the amount of a debt or the validity, priority or extent of a lien or security interest that purport to affect the rights of any entity other than the debtor-in-possession and the creditor.* For the limited purpose of obtaining the interim relief requested in the Motion, the Debtor does not dispute the validity or extent of liens in favor Regions Bank with respect to cash collateral (as that term is defined in 11 U.S.C. § 363(a)). The Debtor reserves the right to challenge the validity or extent of any such liens at or before the final hearing on the Motion. See Page 2 of the Motion.

*2. Granting surcharge or "carve-out" rights to professionals or any restrictions (other than court approval) on the surcharge or carve-out rights granted to professionals—for example, a restriction on investigation or pursuit of causes of action*

*against a lender or secured creditor*. See paragraph 21 of the Motion and the Budget attached hereto as Exhibit A.

## CONCLUSIONS

The Court has considered the Motion, and after due deliberation and good and sufficient cause appearing for the entry of the within order, the Court hereby finds and orders as follows:

1. The Debtor filed its petition under Chapter 11 of the Bankruptcy Code on February 22, 2020 (the "Petition Date") and is presently operating as a debtor-in-possession in accordance with Sections 1107 and 1108 of the Bankruptcy Code.

2. Notice of the Motion has been served in accordance with Federal Rule of Bankruptcy Procedure 4001(d) and the applicable Local Bankruptcy Rules, which notice is appropriate in the particular circumstances and is sufficient for all purposes under the Bankruptcy Code and the applicable Bankruptcy Rules with respect to the relief requested thereon.

3. Only Regions Bank appears to assert a lien on Debtor's cash collateral (as that term is defined in 11 U.S.C. § 363(a)).

    a. <u>Term Loan</u>. On June 23, 2016, Regions Bank filed a UCC-1 financing statement with the Tennessee Secretary of State, asserting a lien on substantially all of the Debtor's assets.

    b. <u>Line of Credit</u>. On April 6, 2017, Regions Bank filed a UCC-1 financing statement with the Tennessee Secretary of State, asserting a lien on substantially all of the Debtor's assets.

c. The Debtor's lien review found no other UCC-1 financing statements asserting a lien on the Debtor's assets.

4. Regions Bank asserts a valid, perfected security interest in the Debtor's property, including its cash collateral, which would entitle it to adequate protection for any diminution in the value of its collateral arising from the Debtor's post- petition use thereof. Based on the asserted existence of the security interests, in the interim period pending the Court's final determination of any lien validity or priority, the Debtor requires immediate use of cash collateral in order to continue its business operations without interruption, and to avoid immediate and irreparable harm to the estate pending a final hearing on the Motion. In the absence of the use of cash collateral, the continued operation of the Debtor's business would not be possible, and serious and irreparable harm to the Debtor and its estate would occur.

IT IS HEREBY ORDERED as follows:

1. *Use of Cash Collateral*. The Debtor is authorized to use cash collateral until a final hearing on the Motion in accordance with the terms of the Motion and the Budget attached to the Motion as Exhibit A and which may be amended prior to a final hearing on the Motion. In addition to the expenses set forth in the Budget, Debtor is authorized to use cash collateral for payment of: (i) allowed professional fees and disbursements to Debtor's professionals in this case; (ii) advanced filing fees, legal and litigation costs, and other advance cost expenses incurred by Attorney Terry J. Canady for collecting Debtor's accounts in the ordinary course of business; (iii) United States Trustee quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6); and any fees payable to the Clerk of the Bankruptcy Court.

2. *Adequate Protection*. Subject to the provisions of Paragraph 4 hereof, and pending a final hearing on the Motion, as interim adequate protection for the use of, and any diminution in the value of, the collateral, Regions Bank is granted the following:

    a. *Replacement Liens*. Regions Bank shall receive a replacement security interest under Section 361(2) of the Bankruptcy Code in the Debtor's post-petition property and proceeds thereof (excluding the Debtor's rights under Sections 544, 545, 546, 547, 548, 549, and 550 of the Bankruptcy Code), to the same extent and priority as its purported security interest in the Debtor's pre-petition property and the proceeds thereof.

    b. *Automatic Perfection*. For the limited purpose of this interim Order, the replacement lien and security interest granted herein shall be deemed perfected upon entry of this Order without the necessity of any of Regions Bank taking possession of any collateral or filing financing statements or other documents.

3. *Insurance and Reporting*. The Debtor shall keep its assets insured by reasonable and sufficient insurance coverage as required by the terms of the loan documents executed by the Debtor in favor of Regions Bank, and shall, upon request and reasonable notice, provide Regions Bank with financial statements setting forth the Debtor's revenue and expenses to allow Regions Bank to determine the extent to which the Debtor is complying with the Cash Collateral Budget.

4. *Carve-Out*. Debtor is granted a carve-out and authority to use cash collateral for payment of: (i) allowed professional fees and disbursements to Debtor's professionals in this case; (ii) advanced filing fees, legal and litigation costs, and other advance cost expenses incurred by Attorney Terry J. Canady for collecting Debtor's

accounts in the ordinary course of business; (iii) United States Trustee quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6); and any fees payable to the Clerk of the Bankruptcy Court.

5.  *Interim Order*; *Final Hearing; Miscellaneous Provisions*. This is an interim Order. The final hearing on the Motion (the "Final Hearing") is hereby set for: March ___, 2020, Courtroom 2, 701 Broadway Nashville, TN 37203. Any objections to entry of a final order shall be filed by March ____, 2020.

   a. *Modification of Interim Order*. At the Final Hearing, all of the provisions of this Order with respect to adequate protection may be hereafter modified or continued by the Court as a final order (the "Final Order") based upon, without limitation, the terms and conditions of a final order determining any lien disputes, or as further determined by the Court at such Final Hearing on the Motion. The Debtor and Regions Bank each reserve the right to seek to modify the terms and conditions of this Order with respect to adequate protection, or otherwise, in connection with the entry of the Final Order.

   b. *No Limitation*. Nothing contained herein shall be deemed or construed to (i) limit the Debtor or Regions Bank to the relief granted herein; (ii) bar the Debtor or Regions Bank from seeking other and further relief for cause shown on appropriate notice to parties-in-interest entitled to notice of same, (provided, however, that any such relief constituting a modification of this Order shall be permitted only to the extent consistent with the terms of the Final Order (as set forth herein), or (iii) require Regions Bank to make any loans or advances to the Debtor.

6. Upon entry of this Order, Notice of this Order shall be served on (i) the Debtor's twenty largest unsecured creditors, (ii) the Office of the United States Trustee, and (iii) all the Debtor's secured creditors.

IT IS SO ORDERED.

**This Order Was Signed And Entered Electronically as Indicated At The Top Of The First Page**

APPROVED FOR ENTRY:

/s/ Robert J. Gonzales
Robert J. Gonzales (robert@emerge.law)
Elliott W. Jones (elliott@emerge.law)
Nancy B. King (nancy@emerge.law)
EmergeLaw, PLC
4000 Hillsboro Pike, Suite 505
Nashville, Tennessee 37215
(615) 953-2629

ATTORNEYS FOR DEBTOR